UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-185-GWU

PHILLIP H. WALTON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Phillip H. Walton, was found by an Administrative Law Judge (ALJ) to have “severe” impairments consisting of a right shoulder injury, back pain, and a right flank injury. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ found that Mr. Walton retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 17-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he could lift 20 pounds occasionally and 10 pounds frequently, with the ability to stand and walk six hours and sit six hours each in an eight-hour day, and also had the following non-exertional limitations. He: (1) could frequently climb ramps and stairs; (2) could occasionally kneel, crouch, crawl, stoop, and climb ladders, ropes, and scaffolds; and (3) could occasionally reach overhead on the right, but would have no limits on the left. (Tr. 50). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.). Alternatively, the ALJ provided a second hypothetical question concerning the same individual being limited to lifting, handling, and carrying no more than 10 pounds, or performing any lifting overhead with the right shoulder, and who needed to avoid bending, squatting, stooping, or twisting in the thoracic spine area. (Tr. 51). The VE responded that there were sedentary jobs that such a person could perform, and provided the state and national job numbers. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. There is an additional issue in that Mr. Walton's Date Last Insured (DLI) was December 31, 2006, meaning that he had to establish

disability before that date in order to be entitled to DIB benefits. His SSI application is not affected.

Mr. Walton alleged disability beginning January 14, 2005 due to injuries to his right shoulder, right flank, right elbow, and back. (Tr. 118). At the hearing, he testified that he had been working as a concrete panel rigger at the time of his accident in December, 2004, when he was injured by being trapped between two panels. (Tr. 28, 33). He had had no surgery on his shoulder and claimed to be waiting to hear from a free clinic, although it had been more than three years since his accident. (Tr. 34). He also had difficulty due to degenerative disc disease and arthritis in his back and a spur on his right foot. (Tr. 36). There was also a complaint of constant right flank pain. (Tr. 46). His activities were limited, although he would use a riding lawn mower and a weed eater that weighed 13 pounds to take care of his lawn at times. (Tr. 38, 43). He stated that he could stand for 20 minutes and sit for 30 to 40 minutes without changing position, and could not lift more than 10 pounds. (Tr. 42-3).

Medical records in the transcript do include some objective studies including an MRI of the right shoulder showing a partial tendon tear, an MRI of the lumbar spine showing bulging discs at two levels and “mild” facet joint arthritis with no evidence of focal disc herniations or nerve root swelling. (Tr. 210-11).

Prior to the MRI examinations, Dr. James Owen had performed a consultative examination for Worker's Compensation purposes. (Tr. 167). His examination showed that Mr. Walton had a mildly suffering appearance and a reduced grip on the right as compared to the left. (Tr. 168). He made an obvious show of pain with any type of movement of the right shoulder, right flank, and right mid-back, with more pain on extension than flexion of the back and more pain with bending to the right than to the left. Reflexes, strength, and sensation were all normal, and he was able to squat, walk heel to toe, and stand on one foot. There was a significant reduction of his ability to twist laterally, but straight leg raising was normal and range of motion in his extremities was normal except for the shoulder. (Tr. 168-9.). A right shoulder x-ray was normal. (Tr. 169). Dr. Owen diagnosed persistent right flank and back pain and persistent shoulder pain and commented that Mr. Walton might not yet be at maximum medical improvement. (Id.). However, in terms of functional restrictions, he limited the plaintiff to lifting, handling, and carrying objects weighing no more than approximately 10 pounds, and opined that he would not be able to engage in activity that required bending, squatting, stooping, or twisting in the thoracic spine area or lifting overhead. (Tr. 170).

A state agency physician, Dr. Carlos Hernandez, reviewed the record on January 31, 2007 and opined that Dr. Owen's lifting restriction was not consistent with objective findings and therefore was given little weight. (Tr. 189). He affirmed

the prior decision of a non-medical state agency employee that Mr. Walton would be capable of lifting 20 pounds occasionally and 10 pounds frequently with occasional climbing, stooping, kneeling, crouching, crawling, and overhead lifting on the right. (Tr. 184-90).

The ALJ stated in his decision that he gave little weight to Dr. Owen's functional capacity assessment, because he viewed the physician's examination as being "essentially normal" and concluded that Dr. Owen had "based his residual functional capacity assessment on subjective allegation[s] . . . ." (Tr. 20). The ALJ felt that the state agency rationale was more consistent with the evidence as a whole. (Id.). The parties extensively dispute the propriety of accepting the non-examining opinion in their briefs, but in view of the fact that the ALJ provided Dr. Owen's restrictions to the VE in the second hypothetical question and received testimony that there were jobs that the plaintiff could perform, any error is harmless.

The plaintiff also alleges that the ALJ improperly ignored the opinion of Dr. Maher Kassis. The medical evidence shows that Dr. Kassis saw the plaintiff on three occasions, March 5, March 27, and April 11, 2008. (Tr. 282, 286, 294). The physician's office notes are difficult to read, but apparently include findings of minimal difficulty in standing, intact reflexes, sensation, and strength, and pain when walking on toes and heels and with straight leg raising at 50 degrees. (Tr. 287). In addition to reflux disease and hypertension, which were said to be stable on

medications, the physician prescribed an antibiotic for a chronic ear infection and pain medication and a muscle relaxer for low back pain/degenerative disc disease. (Id.). Dr. Kassis obtained a CT scan of the head for a complaint of headaches which was said to be negative, and appeared to indicate that the headaches were due to dental decay. (Tr. 282). The plaintiff complained of left thumb pain, but an x-ray showed only early degenerative changes. (Tr. 284). Dr. Kassis prescribed Trazodone for depression, and recommended weight loss and exercise for treatment of high cholesterol. (Tr. 282, 286).

On April 15, 2008, Dr. Kassis wrote a letter summarizing his patient's ailments, and stating that "[o]verall his total endurance is limited for full-time work." (Tr. 281). The plaintiff interprets this statement as an opinion that he did not possess the endurance for full-time work, and states that it was error to reject it in favor of the opinion of a non-examining source who did not have access to the entire record, citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The court agrees with the defendant, however, that the statement of Dr. Kassis was equivocal. Since it did not say to what degree the plaintiff's endurance was limited, it could also be interpreted as being consistent with the limitations given by Dr. Owen. Moreover, Dr. Kassis had been treating the plaintiff for slightly over a month at the time the opinion was given, and had obtained objective studies that were largely normal apart from relatively minor conditions such as an ear infection and elevated lipids.

Nor did his physical findings regarding musculoskeletal problems appear to reveal findings that would support an inability to perform full-time work, at least to a lay reviewer. The factors an ALJ is supposed to weigh in considering the deference due to the opinion of a treating physician include the length of the treating relationship and the supportability of the opinion. 20 C.F.R. § 404.1527(d)(2). Although the ALJ's treatment of the opinion of Dr. Kassis could have been more detailed, the Sixth Circuit has noted that in cases where a treating source opinion is "patently deficient" a reversal may not be required on purely procedural grounds. Wilson v. Commissioner of Social Security, 378 F.3d 541, 547 (6th Cir. 2004). In the present case, the ambiguity of the opinion, combined with the lack of objective findings and the brevity of the treating relationship, do not warrant reversal.

Finally, the plaintiff objects to the ALJ's decision as reflecting "sit and squirm jurisprudence." He notes that the ALJ drew negative inferences from the fact that the plaintiff appeared at the hearing with a heavy tan, that he appeared to have a normal gait, and that he stood up only one time during the hearing, otherwise exhibiting no pain behavior. (Tr. 19). However, these were not the only reasons given for questioning the plaintiff's credibility, with the ALJ also noting little treatment for much of the period between May, 2005 and March, 2008, the plaintiff's ability to use a 13-pound weed eater after testifying that he could not lift more than 10 pounds and inconsistent statements regarding side effects of medication. (Tr. 19-

20). Ultimately, it was the plaintiff's burden to prove his case, and the evidence failed to establish greater limitations than in the second hypothetical given to the VE.

The decision will be affirmed.

This the 30th day of August, 2011.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***G. Wix Unthank***

**United States Senior Judge**